Jennifer L. Neeleman, WSBA #37374
NEELEMAN LAW GROUP, P.C.
1403 8th Street
Marysville, WA 98270
Telephone: (425) 212-4800
Facsimile: (425) 212-4802
Email: jennifer@neelemanlaw.com

The Honorable Christopher M. Alston
Location: Seattle

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| In re: | : | Case No.: 25-11655 |
| | : | |
| Di Antar Group, LLC | : | DEBTOR'S PLAN OF |
| | : | REORGANIZATION |
| Debtor(s). | : | |
| | : | |

## ARTICLE I
## BACKGROUND

### 1.01   History of the Debtor's Business and Events Leading to Bankruptcy

The business is a shabu-shabu buffet restaurant in located in Redmond, Washington and began operating in October, 2019 supported by a single partner investor. Within just four (4) months after starting operations, the business was affected by the COVID-19 pandemic and experienced significant operational disruptions, and the business lost its partner investor. At this time the business obtained a Merchant Cash Advance (MCA) loan in order to acquire the ownership interest of the partner investor and continue with operations.

After taking out the MCA loan, payments soon became unstainable and, in an attempt to remain current on obligations of the initial MCA loan, the business took out additional MCA loans believing it would see a turnaround in income. This led to a cycle of increasingly burdensome debt with aggressive repayment terms. In an effort to stabilize the finances, the Debtor applied for a SBA loan with the intent of using the proceeds to consolidate outstanding debt and give the Debtor more manageable repayment terms. The loan was approved, but rather

1

than being able to use the proceeds to consolidate the MCA liabilities the loan was conditioned upon satisfying an outstanding loan to release an active UCC-1 filing. The business continued to fall further behind on its obligations, including rent and tax payments, due to the aggressive repayment structure of the MCA loans.

The Debtor attempted to negotiate settlements on the MCA loans through a third-party debt relief agency. The Debtor made consistent payments to the third-party agency, but they were unable to negotiate settlement terms. Facing mounting collection pressure including a possible eviction, an emergency petition was filed under Chapter 11, Subchapter V on June 16, 2025 (herein the "Petition Date") in an effort to reorganize the outstanding debt owed and allow the Debtor to continue operating.

### 1.02    Insiders of the debtor

Insiders of the Debtor are:

Hee Soo Kim – 100% Shareholder

### 1.03    Management of the Debtor Before and During the Bankruptcy

Hee Soo Kim served as Manager of the Debtor prior to the Petition Date and will continue to serve as manager of the Debtor during the plan term for which she will be compensated pursuant to the terms set forth in the attached projections.

### 1.04    Significant Events During the Bankruptcy Case

- The Chapter 11, Subchapter V Trustee was appointed on June 18, 2025.

- The 341 Meeting of Creditors was held on July 10, 2025 at 10:00 am.

- An *Application to Employ Neeleman Law Group* was filed on July 17, 2025 and an order was entered granting Debtor's Application on July 18, 2025 [ECF. No. 51].

- An *Application to Pay Wages and Salaries* was filed on June 22, 2025 and an order was entered granting Debtor's Application on June 27, 2025 [ECF No. 35].

- A *Final Motion for the Use of Cash* Collateral was filed on July 1, 2025 and an order was entered granting the Motion on July 15, 2025 [ECF No. 47].

- Debtor has filed the Monthly Operating Reports for the periods of June, 2025 and July, 2025.

### 1.05    Projected Recovery of Avoidable Transfers

The Debtor is not aware of any preferences or fraudulent conveyances which may be subject to avoidance actions.

### 1.06    Current and Historical Financial Conditions

The identity and fair market value of the estate's assets as of the petition date are listed in **Exhibit A**.

### ARTICLE II
### SUMMARY

This Plan of Reorganization (the "Plan") under Chapter 11, Subchapter V of the Bankruptcy Code (the "Code") proposes to pay creditors of the Debtor in the manner and consistent with the terms contained herein.

This Plan provides for unclassified administrative claims, one class of secured claims, one class of unsecured claims, and one class of equity security holders.

Each creditor and/or equity security holder should refer to Articles III through V of this Plan for information regarding the precise treatment of its claim.  Pursuant to 11 USC §1181(b) of the United States Bankruptcy Code, unless the Court orders otherwise, a Disclosure Statement providing further detail as pertaining to background and treatment of claims treatment is not required and will not be filed and circulated in this case.  Accordingly, creditors and equity

security holder should rely on the contents of this Plan only in determining whether to accept or reject this Plan's treatment of your claim.

**YOUR RIGHTS MAY BE AFFECTED BY CONFIRMATION OF THIS PLAN. YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE. (IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE**

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND INTERESTS

**3.01**      **Class 1**      Secured claim of Gesa Credit Union

**3.02**      **Class 2**      All general unsecured claims allowed under § 502 of the U.S. Bankruptcy Code

**3.03**      **Class 3**      Equity Security Holder Hee Soo Kim

## ARTICLE IV
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS
## AND PRIORITY TAX CLAIMS

**4.01**      **Unclassified Claims.**      Under section §1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

**4.02**      **Administrative Expense Claims.**  Pursuant to 11 U.S.C. 1191(e) and 11 U.S.C. § 507(a)(2) each holder of an administrative expense claim allowed under §503 of the Code will be paid pursuant to the Plan term as provided for in Article V below.

**4.03**      **Priority Tax Claims.**  Each holder of a priority tax claim will be paid the amount of its allowed claim in full as provide in Article V below.

## ARTICLE V
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

**5.01**     Claims and interests shall be treated and paid as follows:

| Class | Impairment | Voting Status | Treatment |
|---|---|---|---|
| **Class 1 – Gesa Credit Union** | Impaired | Entitled to Vote | Gesa Credit Union holds a secured claim in the amount of $322,313.19.  The secured claim was perfected by the UCC-1 filing statement filed on November 17, 2023, File Number: 2023-321-6878-0.  The claim will be paid a secured amount in the amount of **$74,400.00.**  Payments will be made in the amount of $1575.00 per month beginning December 5, 2026 and continuing monthly until paid.<br><br>Interest will accrue on the secured portion of the claim as of the Effective Date at the rate of 4.00%.<br><br>The remaining balance of the claim in the amount of $247,913.19 will be paid as a Class 2 unsecured claim. |
| **Class 2 – General Unsecured claims** | Impaired | Entitled to Vote | Allowed Class 2 claims will be paid a prorata share of $10,000.00 with monthly payments of $250.00 beginning March, 2027 and distributed pursuant to Exhibit B.<br><br>To maximize efficiency for Class 2 claims and the Debtor, the Debtor may pay the total amount to be received under the plan to each creditor as a lump sum payment if the total amount to be received by individual creditors is $150.00 or less over the plan term. |
| **Class 3 – Claims of Interest of Equity Security Holder – Hee Soo Kim** | Impaired | Not Entitled to Vote | n/a |
| **Unclassified Claim of the Washington State Department of Revenue** | n/a | | The Washington State Dept of Revenue (Revenue) has filed a proof of claim in the amount of $152,422.88.  Of that, $114,724.47 is for priority taxes.<br><br>Payments on the priority portion of Revenue's claim will be made in the amount of $3,515.00 per month beginning March, 2027 and continuing thereafter until the priority amount set forth above is paid in full, not to be extended beyond May, 2030.  Consistent with 11 U.S.C. §511 and RCW 82.32.050, interest on the priority claim will accrue at the rate of 7% per annum. |

| | | | |
|---|---|---|---|
| | | | If any amount of the total set forth above remains outstanding in May, 2030, Debtor will remit with its May, 2030 payment additional funds as necessary to satisfy any outstanding balance to pay the priority amount in full. Nothing herein is intended to permit Debtor to skip monthly payments as they become due, or to prohibit Debtor from fully retiring the claim prior to May, 2030.<br><br>The $37,698.41 balance on Revenue's claim will be treated as a Class 2 General Unsecured Claim. |
| **Unclassified Claim of the Internal Revenue Service** | n/a | | The Internal Revenue Service (IRS) has filed an proof of claim totaling $69,705.45. Of that, $24,396.00 is for priority taxes. Debtor anticipates the priority amount will be amended to approximately $55,000.00.<br><br>Payments on the priority portion of the IRS's claim will be made in the amount of $1,750.00 per month beginning March, 2027, and continuing thereafter until the priority amount set forth above is paid in full, not to extend beyond May, 2030. Interest will accrue at the rate and applicable terms determined under the federal statutory rate at 8% per annum. If any amount of the total set forth above remains outstanding in May, 2030, Debtor will remit with its May, 2030 payment additional funds as necessary to satisfy any outstanding balance to pay the priority amount in full. Nothing herein is intended to permit Debtor to skip monthly payments as they become due, or to prohibit Debtor from fully retiring the claim prior to May, 2030.<br><br>The estimated $45,309.45 balance on the IRS's claim will be treated as a Class 2 General Unsecured Claim. |
| **Unclassified Claim of Cyclo Corporation** | n/a | | The claim of Cyclo Corporation in the amount of $66,480.07 representing the lease arrearage through the Petition Date will be paid $4,500.00 per month beginning December, 2026 and continuing for approximately 14 months until the amount is paid in full. |
| **Unclassified Claim of Subchapter V Trustee Michael DeLeo** | n/a | | The allowed claim of Subchapter V Trustee, estimated at $3,500.00, will be paid monthly payments in the amount of $500.00. Payments started in August, 2025 and will continue until paid. |

| Unclassified Claim of Neeleman Law Group, P.C. | n/a | | The allowed administrative claim of Neeleman Law Group, P.C., estimated at $35,000.00 will be paid from funds held in trust and monthly payments in the amount of $500.00 per month following payment in full of the Sub Chapter V Trustee. |
|---|---|---|---|

## ARTICLE VI
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

**6.01** **Disputed Claim**. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtors or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

**6.02** **Delay of Distribution on a Disputed Claim**. No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

**6.03** **Settlement of Disputed Claims**. The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE VII
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.01** **Assumed Executory Contracts and Unexpired Leases**.

The Plan constitutes a motion by the Debtor to assume each of the following executory contracts and/or unexpired leases effective upon the Effective Date of this Plan as defined in Article IX.

(a) The Debtor assumes the sublease rental agreement with Cyclo Corporation.

7

        (b)      The Debtor assumes any interest of the Debtor in the master lease with Avalon Overlake, LLC.

**7.02  Rejected Leases and Executory Contract**

        The Plan constitutes a motion by the Debtor to conclusively reject all other executory contracts and/or unexpired leases not expressly assumed under section 7.01(a) above, or before the date of the order confirming this Plan, upon the Effective Date of this Plan. A proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan. The failure of any such entity to file a Proof of Claim within the specified time period will result in the disallowance of such Claim.

**ARTICLE VIII**
**MEANS FOR EXECUTION OF THE PLAN**

**8.01  Implementation of the Plan.** The Plan will be funded with revenue from the Debtor's operation.  Attached hereto as Exhibit C, are Debtor's projected Income and Expenses from December, 2026 to May, 2030 as supported by the attached declaration of Hee Soo Kim (Exhibit D). The projected income and expenses have been annualized over the plan term.  It is anticipated the Debtor's fixed expenses will remain relatively constant moving forward with variable expenses increasing proportionately with revenue.  Debtor expects the income and expenses to remain consistent through the life of the Plan.

        Monthly payments will be paid by the Debtor, direct to creditors in the manner referenced in Article V.

**8.02  Revesting of Debtor's Assets**.  Subject to the terms of the Plan, and except for such Claims, liens, charges, rights and interests required to continue pursuant to the Plan, on the Effective date, all property comprising the Estate shall revest in the Reorganized Debtor.  As of

the Effective Date, the Reorganized Debtor may operate, use, acquire, and dispose of property and settle and compromise Claims or interests without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan and the Confirmation Order.

**8.03** **Continued Operation of the Business.** The Reorganized Debtor shall continue to own, maintain, operate and manage the Business without further notice or order of the Bankruptcy Court. Creditors may not take any actions against the Debtor/Reorganized Debtor (including, without limitation, lawsuits or other legal actions, levies, attachments, or garnishments) to enforce or collect either pre-confirmation obligations or obligations due under the Plan, so long as the Debtor is not in material default under the Plan.

## ARTICLE IX
## GENERAL PROVISIONS

**9.01** **Administrative Claims Bar Date.** The deadline for submission of all Claims entitled to priority pursuant to §§507(a)(1) and (b) of the Bankruptcy Code incurred prior to Confirmation, with the exception of fees and costs of Professionals and the Subchapter V Trustee, shall be thirty (30) days following the Effective Date. Subject to §503(b)(1)(D) of the Bankruptcy Code, failure to file a Claim by this date shall conclusively bar the claimant from asserting its Claim, which Claim shall be forever barred, expunged and discharged. If for any reason such Administrative Claim is incapable of being forever barred and disallowed, then the Holder of such Claim shall in no event have recourse to any property to be distributed pursuant to the Plan. Post-petition statutory tax claims shall not be subject to any Administrative Claims Bar Date.

**9.02** **Motion to Determine Amount of Secured Claim.** With respect to the Classes of Secured Claims as set forth in Article V above and in compliance with Federal Bankruptcy Rule

9

3012, the Plan constitutes a motion to determine the amount of each secured claim under 11 U.S.C. §506(a).  The secured amount proposed for each class of Secured Claims is set forth in the treatment of each class under Article V above.

      **9.03**    <u>**Relief from Automatic Stay.**</u>  To the extent the Debtor intends to surrender collateral to secured parties, the Automatic Stay is lifted as of the Effective Date of the Plan to allow the secured creditor to take possession of and sell the collateral.

      **9.04**    <u>**Definitions and Rules of Construction**</u>. The definitions and rules of construction set forth in §§ 101 and 102 of the United States Bankruptcy Code (the "Code") shall apply when terms defined or construed in the Code are used in this Plan.

      **9.05**    <u>**Effective Date of Plan**</u>.   The Effective Date of this Plan is the first Business Day that is fourteen (14) calendar days following the entry of the Confirmation Order, unless such order is subject to a stay.

      **9.06**    <u>**Severability**</u>.  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

      **9.07**    <u>**Binding Effect**</u>. The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

      **9.08**    <u>**Captions**</u>.   The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

      **9.09**    <u>**Controlling Effect**</u>.   Unless a rule of law or procedure is supplied by federal law (Including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Washington governs this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**9.10** **Substantial Consummation.** The Debtor will substantially consummate the Plan upon commencement of monthly payments as set forth above in Article V and as defined by 11 U.S.C. §1101.

**9.11** **Post-Confirmation Employment of Professionals.** The Reorganized Debtor shall be authorized to employ and compensate Professionals following Confirmation upon such terms and conditions as the Reorganized Debtor deem reasonable and appropriate without further notice or order of the Bankruptcy Court. If applicable, the Subchapter V Trustee may apply to this Court for approval of post-confirmation fees and costs, to be paid by the Reorganized Debtor.

**9.12** **Post-Confirmation Reporting.** The Reorganized Debtors shall prepare and file the reports as required by Local Bankruptcy Rule 2015-1(e).

**9.13** **Retention of Lien**. The lien of Classes of Secured Creditors as provided for in Article V shall be retained until all required payments to the creditors under the Plan are completed.

**9.14** **Retention of Jurisdiction by the Bankruptcy Court**. The Bankruptcy Court retains jurisdiction until the entry of a Final Decree.

**9.15** **Notice**. Any notices, requests, and demands required or permitted to be provided under the Plan, to be effective, shall be in writing either addressed as indicated below, or by electronic means to the email addresses below:

**Neeleman Law Group, PC**
1403 8th Street
Marysville, WA 98270
Email: jennifer@neelemanlaw.com
Telephone: (425) 212-4800

**Michael DeLeo**
Peterson Russell Kelly Livengood PLLC
10900 NE 4th Street, Suite 1850
Bellevue, WA 98004
Email: mdeleo@prklaw.com
Telephone: (425) 990-4014

**9.16** **Binding Effect**. The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity or person regardless of whether or not (i) a claim was scheduled, (ii) a Proof of Claim was filed, (iii) a Claim is an Allowed Claim or (iv) the holder of such Claim voted to accept the Plan.

**9.17** **Modification of Plan**

The Plan Proponent may modify the Plan at any time before confirmation of the Plan; however, the Court may require re-voting on the Plan. The Plan Proponent may modify the Plan after confirmation in accordance with the provisions stated in 11 U.S.C. §1193(c).

## ARTICLE X
## DISCHARGE

**10.01**. **Consensual Plan** This Plan may be confirmed if it meets all provisions of 11 U.S.C. §1129(a) except for 11 U.S.C. §1129(a)(15), wherein the Plan is accepted by every impaired class of claims and interests under the Plan. In that event, the Court will grant a Discharge upon confirmation which will discharge the Debtor from pre-confirmation debts pursuant to § 1141(d) of the Bankruptcy Code.

**10.02**. **Cramdown Plan** This Plan may also be confirmed without the consenting vote of every impaired class so long as it does not discriminate unfairly and is fair and equitable pursuant to 11 U.S.C. §1191(b). Confirmation of a Cramdown Plan does not discharge any debt provided for in this Plan until the court grants a Discharge on completion of all payments under this Plan which will discharge the debtor from pre-confirmation debts pursuant to § 1141(d) of the Bankruptcy Code.

**10.03**.  Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

## ARTICLE XI
## DISBURSING AGENT

**11.01**.  The Debtor will act as the Disbursing Agent in either a Cramdown Plan or a Consensual Plan, as described in Sections 10.01 and 10.02 herein.  The Debtor will make payments pursuant to the terms set forth in Article V of the Plan.  Neeleman Law Group, P.C. will be paid directly by the reorganized Debtor at the rate of $250.00 per hour for the time spent assisting the Debtor with the filing of post-confirmation reports.

**11.02**.  If, for any reason the Trustee acts as a Disbursing Agent and/or Plan Administrator in a cramdown plan, payments will be disbursed according to the terms set forth in 11.01 and the Trustee will be compensated at his customary rate per hour plus applicable postage, for services rendered in acting as the disbursing agent.   For services as Post-Confirmation Plan Disbursing Agent, if applicable, the Trustee will be authorized to be paid any amount less than $500.00 per month upon 10 days' notice to Neeleman Law Group, P.C. as counsel for the estate, after which the Court may enter an order approving the fees without further notice and hearing.

**11.03.**  If the Debtor makes a partial Plan payment, to the extent funds are available, funds will be disbursed first to administrative claims, Trustee's fees, then to claims in the following order: secured claims, administrative attorney's fees, priority claims, and unsecured claims.  If funds are not available to make the payment in full pursuant to Article V, payments will be made on a prorated basis for each classification of claims.  If funds are available, payments will be made in the order stated above and will be paid pursuant to Article V.

**12.01** **Event of Default**. If the Debtor fails to make any payment as referenced in Article V, or to perform any other obligation required under the Plan for more than twenty (20) days after the time specified in the Plan, the party alleging such default shall serve upon the Debtor, its attorney, and in a case confirmed pursuant to §1191(b) of the Bankruptcy Code to the Trustee, a written notice of default. The Debtor is in default under the Plan if the Debtor fails within twenty (20) days of receipt of the notice of default: (i) to cure the default to the party alleging such default or (ii) to obtain from the court an extension of time to cure the default or a determination that no default occurred. If the Debtor remains in default after the time specified above, such party may proceed to collect its allowed claim under applicable non-bankruptcy law, notwithstanding the automatic stay, discharge injunction, or any payment schedule prescribed under the Plan.

**12.02** **Additional Default Remedies.** In a cramdown plan, in addition to or in the alternative to the other remedies for default previously set forth above, a creditor or party in interest, including the Trustee, may bring a motion to convert or dismiss the case under 11 U.S.C. § 1112(b) after the Plan is confirmed, if there is a material default in performing under the Plan, or if there are other grounds for finding cause to convert or dismiss under 11 U.S.C. § 1112(b).

**ARTICLE XIII**

**CONFIRMATION REQUIREMENTS AND PROCEDURES**

**13.01** **Consensual Plan.** To be confirmable, a Consensual Plan must meet the requirements listed in 11 U.S.C. § 1129(a) not including the contribution of all disposable income requirement of 11 U.S.C § 1129(a)15 of the Bankruptcy Code. These include the

requirements that; the Plan must be proposed in good faith (11 U.S.C. §1129(3)); every impaired creditor or equity interest holder has voted to accept the Plan, without counting votes of insiders (11 U.S.C. §1129(8)); and the Plan must be feasible.

**13.02 <u>Cramdown Plan.</u>** To be confirmable, a Cramdown Plan must be fair and equitable and meet the requirements listed in 11 U.S.C. §1129(a) but does not require that every class of claims and interest has accepted the plan (11 U.S.C. §1129(a)(8)) nor that at least one impaired class has accepted the Plan (11 U.S.C 1129(a)(10)). A Cramdown Plan also requires that the Debtor contribute all disposable income to the Plan during the Plan term and that the Plan payment be not less than the net disposable income of the Debtor (11 U.S.C §1191(c)).

**13.03 <u>Liquidation Analysis</u>** To confirm the Plan, the Court must find that all creditors and equity interest holders **who do not accept the Plan** will receive at least as much under the Plan as such claim and equity interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached as **Exhibit E**.

**13.04**. **<u>Feasibility</u>** To confirm the Plan, the Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan. The Debtor believes that funds will be available to begin making payments as proposed in Article V and based on the Debtor's projections, under the proposed Plan, the Debtor's funds are sufficient to make the payments as proposed over the life of the Plan without further reorganization.

**13.05**. **<u>Who May Vote or Object</u>**

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met. Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or

against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

The Plan Proponent believes that Classes 1, 2, 3, 4 and 5 are impaired and that holders of claims in each of the impaired classes are therefore entitled to vote to accept or reject the Plan.

When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure. **The deadline for filing a proof of claim was August 1, 2025.**

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity and should cast one ballot for each claim.

*EVEN IF YOU ARE NOT ENTITLED TO VOTE ON THE PLAN,*

*YOU HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.*

**13.06**. **Votes Necessary to Confirm the Plan**

To confirm a Consensual Plan, all impaired classes must have voted to accept the Plan. If all impaired classes have not voted to accept the Plan, a plan may still be confirmed by a cram down of non-accepting classes.

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm a Cramdown Plan if the Plan meets the requirements referenced in Section 13.02 above. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except for those requirements referenced in Section 13.02 above does not discriminate unfairly and is a fair and equitable toward each impaired class that has not voted to accept the Plan (11 U.S.C. §1191(b)).

*YOU SHOULD CONSULT YOUR OWN ATTORNEY IF A CRAMDOWN CONFIRMATION WILL AFFECT YOUR CLAIM OR EQUITY INTEREST, AS THE VARIATIONS ON THIS GENERAL RULE ARE NUMEROUS AND COMPLEX.*

### ARTICLE XI
### REQUEST FOR CONFIRMATION AND RECOMMENDATION

**14.01** **Request for Confirmation.** The Debtor requests Confirmation of the Plan in accordance with section 1191 of the Bankruptcy Code.

**14.02** **Recommendation**. The Debtor believes that Confirmation and implementation of the Plan are the best alternative under the circumstances and urge all creditors entitled to vote on the Plan to vote in favor of and support Confirmation of the Plan.

*YOU SHOULD CONSULT WITH YOUR ACCOUNTANT OR OTHER FINANCIAL ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO ALL REPRESENTATIONS AND PROJECTIONS CONTAINED HEREIN.*

Dated this 15th day of September, 2025

Respectfully submitted,

/s/ Hee Soo Kim
By: Hee Soo Kim
Di Antar Group, LLC


NEELEMAN LAW GROUP, P.C.

 /s/ Jennifer L. Neeleman
Jennifer L. Neeleman, WSBA #37374
Attorney for Debtor-in-Possession